# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2017, 9:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Arlana McDade,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 28, 2017<br><br>Court of Appeals Case No.<br>49A02-1610-CR-2294<br><br>Appeal from the Marion Superior Court<br><br>The Honorable William Nelson, Judge<br><br>Trial Court Cause No.<br>49G18-1506-F6-21109 |

**Barnes, Judge.**

## Case Summary

Arlana McDade appeals her conviction for Class A misdemeanor criminal recklessness with a deadly weapon. We affirm.

## Issue

The sole issue before us is whether there is sufficient evidence to sustain McDade's conviction.

## Facts

McDade and Whitney Rogers both were romantically involved with a man named Steven Reed, nicknamed "Black." Tr. p. 10. In the early morning hours of May 31, 2015, Rogers was driving her car in Indianapolis with a passenger, her cousin, Quintez Tucker. Near the intersection of 34th and Hovey Streets, a car pulled behind Rogers's car and its driver blew the horn and flashed its lights. Rogers pulled over briefly but then drove away. The other car then pulled in front of Rogers and blocked her in so that she could not drive away. Rogers recognized the car, a gold Monte Carlo, as belonging to McDade.

McDade and two other women got out of the Monte Carlo and approached Rogers's car carrying what Rogers described as "iron bats," possibly baseball bats, although it was dark and she could not see precisely what the objects were. *Id.* at 15. The women then used what they were carrying to smash out all of the windows of Rogers's car except the front window, which was cracked but not entirely broken. Rogers and Tucker were inside the car while the windows were smashed. As the windows were being broken, McDade said, "Black told

me." *Id.* at 16.  Rogers was covered with broken glass but uninjured; Tucker was slightly injured and left the scene after the incident.  The incident caused $1890 in damages to Rogers's car.

The State charged McDade with Level 6 felony criminal recklessness with a deadly weapon and Class A misdemeanor criminal mischief.  After a bench trial, the trial court found McDade guilty of both counts as charged.  At the sentencing hearing, the trial court entered judgment of conviction for Class A misdemeanor criminal recklessness under the alternative misdemeanor sentencing provisions and did not enter judgment of conviction on the criminal mischief charge.  McDade now appeals.

## Analysis

McDade challenges the sufficiency of the evidence.  When addressing a claim of insufficient evidence, we must consider only the probative evidence and reasonable inferences supporting the conviction.  *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016).  It is the fact-finder's role, not ours, to assess witness credibility and weigh evidence to determine whether it is sufficient to support a conviction. *Id.*  "It is not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'"  *Id.* (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)).  "'[E]vidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'"  *Id.* (quoting *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007)).  However, "[e]vidence sufficient only to establish a mere suspicion of guilt is not sufficient to support a conviction."  *Id.* at 135.

[7] In order to convict McDade as charged, the State was required to prove that she recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to another person while armed with a deadly weapon. *See* Ind. Code § 35-42-2-2. The first part of McDade's argument is that the State failed to prove use of a deadly weapon. She notes that Rogers was unable to testify unequivocally as to what was used to smash out her car windows, due to it being dark at the time of the incident, although she described the items as "iron bats." Tr. p. 15.

[8] The statutory definition of "deadly weapon" includes any "weapon, device . . ., equipment, . . ., or other material that in the manner it (A) is used; (B) could ordinarily be used; or (C) is intended to be used; is readily capable of causing serious bodily injury." I.C. § 35-31.5-2-86(a)(2). Blunt objects of various types have been found to constitute a "deadly weapon." *See Timm v. State*, 644 N.E.2d 1235, 1238 (Ind. 1994) (holding long-handled plastic flashlight was "deadly weapon" where blow from it broke victim's glasses and required her to get thirteen stitches); *Corder v. State*, 467 N.E.2d 409, 412 (Ind. 1984) (holding baseball bat was a "deadly weapon"); *Barber v. State*, 418 N.E.2d 563, 568 (Ind. Ct. App. 1981) (holding revolver that shot only blanks was "deadly weapon" because it could be used as a bludgeoning instrument).

[9] Here, even if Rogers could not identify with complete certainty what McDade and her compatriots possessed, she did believe they were metal bats or bars of some kind. In any event, the objects were hard enough to smash in all but one of Rogers's car windows. It is reasonable to infer that, if the objects had been

used with that amount of force on a human being, they easily could have caused serious bodily injury or death. There is sufficient evidence that McDade and her compatriots were armed with deadly weapons when they vandalized Rogers's car.

[10] McDade also contends that there is insufficient evidence she was one of the persons who actually vandalized Rogers's car. She notes that Rogers generally testified, "They busted out my windows," without specifying that McDade was one of the persons who did so. Tr. p. 14. Rogers also testified, however, that she told police McDade was the one "who messed up my car." *Id.* at 19.

[11] Furthermore, as the State points out, a defendant may be charged as a principal yet convicted on proof that he or she aided another in the commission of a crime. *Taylor v. State*, 840 N.E.2d 324, 338 (Ind. 2006). "In Indiana, the responsibility of a principal and an accomplice is the same." *Id.* "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." I.C. § 35-41-2-4. In order to convict someone as an accomplice, there must be proof of his or her affirmative conduct, "'either in the form of acts or words, from which an inference of a common design or purpose to effect the commission of a crime may reasonably be drawn.'" *Griffin v. State*, 16 N.E.3d 997, 1003 (Ind. Ct. App. 2014) (quoting *Peterson v. State*, 699 N.E.2d 701, 706 (Ind. Ct. App. 1998)).

[12] Rogers identified the car that blocked her in on the side of the road as belonging to McDade. McDade approached Rogers's vehicle accompanied by two other

women, and members of the group proceeded to smash in Rogers's windows with heavy objects. During the incident, McDade said, "Black told me." Tr. p. 16. The reasonable inference to be made from this statement is that the crime was motivated by the "love triangle" between McDade, Rogers, and Reed. Even if there is a lack of conclusive proof that McDade wielded a weapon and smashed in one or more of Rogers's car windows, there is clearly sufficient evidence that she aided or induced that crime.

## Conclusion

There is sufficient evidence to sustain McDade's conviction for Class A misdemeanor criminal recklessness. We affirm.

Affirmed.

Kirsch, J., and Robb, J., concur.